## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BERNAL WARD,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:19-01039-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security,*** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bernal Ward brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 15, 16, 18) and those portions of the transcript of the administrative record (Doc. 12) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this

## I.  *Procedural Background*

Ward filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on November 4, 2016. After they were initially denied, Ward requested, and on May 4, 2018, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On November 28, 2018, the ALJ issued an unfavorable decision on Ward's applications, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 12, PageID.128-150).

The Commissioner's decision on Ward's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on October 17, 2019. (*Id.*, PageID.49-54). Ward subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of

---

civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 20, 22). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 21, 23).

notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the

[Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239

The "substantial evidence" "standard of review applies only to findings of

---

(11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211

(11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB and SSI requires a showing that the claimant is under a disability, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), which means that the claimant

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Ward met the applicable insured status requirements through December 31, 2018, and that she had not engaged in substantial gainful activity since the alleged disability onset date of July 14, 2015.[7] (Doc. 12, PageID.134). At Step Two,[8] the ALJ determined that Ward had the

---

[7]    "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

Ward's subject applications alleged disability beginning June 5, 2013. However, another ALJ's decision issued July 13, 2015, on a prior application by Ward found that Ward had not been disabled through the date of that decision, a determination that was upheld by the Appeals Council and affirmed by a federal district court. Noting this prior decision, the ALJ who heard Ward's subject applications found that "res judicata" barred consideration of disability on or before the date of the prior decision, and therefore only considered allegations of disability beginning July 14, 2015. (*See* Doc. 12, PageID.131). Ward does not challenge the ALJ's decision in this regard.

[8] "The severity regulation increases the efficiency and reliability of the evaluation

following severe impairments: obesity, fibromyalgia, mild cardiomyopathy, generalized osteoarthritis, mild peripheral neuropathy, major depression and anxiety, degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, hypertension, and a benign cyst on her left kidney. (Doc. 12, PageID.134 ). At Step Three,[9] the ALJ found that Ward did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 12, PageID.134-138).

At Step Four,[10] the ALJ determined that Ward had the residual functional

---

process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[10] At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about

capacity (RFC) "to perform exertion light work as defined in 20 CFR 404.1567(b)

and 416.967(b),[11] except [she] can sit for a total of 6 hours, and without

_____

> [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

interruption for 1-2 hours[;] can lift, carry, and push/pull up to 10 pounds frequently and up to 20 pounds occasionally[;] can use her upper extremities for both fine and gross manipulation bilaterally, without limitation[;] is limited to the occasional use of her lower extremities bilaterally for pushing and pulling for the operation of foot controls[;] can frequently bend and stoop[;] can occasionally climb, use stairs, crawl, crouch, kneel, and balance[;] can never climb ladders, ropes, or scaffolds[;] can never perform any activities involving unprotected heights[;] can never work around moving and hazardous machinery or drive motor vehicles for commercial purposes[; and] cannot be exposed to the concentrated or excessive exposure to pulmonary irritants, such as dust, odors, and fumes, and extremes in temperatures and humidity." (Doc. 12, PageID.138-147). The ALJ further stated with regard to the RFC: "Obesity has been considered…, along with mild to moderate pain. [Ward] is assessed with mild to moderate pain that does not cause an abandonment of task or of the workstation; here, mild and moderate are terms or conditions that are specifically defined as not preventing the satisfactory completion or work. However, in consideration of her pain and mental issues, and any medication side effects, and as the same would or may affect her concentration, persistence, or pace, [Ward] is limited to simple, unskilled, repetitive, and routine work, to be performed in a low social work environment that has only occasional and casual interaction with

---

factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

coworkers, supervisors, and members of the general public[;] should work in jobs requiring little independent judgment, and in jobs with only routine changes and with no multiple or rapid changes[; and] can be expected to maintain attention and concentration for periods of up to 2 hours at a time, with all customary work breaks." (*Id.*). Based on the RFC, the ALJ determined that Ward was unable to perform any past relevant work. (*Id.*, PageID.148).

At Step Five, after considering testimony from a vocational expert,[12] the ALJ found that there existed a significant number of garment sorter, small products assembler I, and mail clerk jobs in the national economy that Ward could perform given her RFC, age, education, and work experience. (Doc. 12, PageID.148-149). Thus, the ALJ found that Ward was not disabled under the Social Security Act during the adjudicatory period relevant to her applications. (*Id.*, PageID.149-150).

### IV.   *Analysis*

#### a.   **Fibromyalgia**

Ward first argues that the ALJ erred by failing to evaluate her fibromyalgia under the standards set forth in Social Security Ruling (SSR) 12-2p, 77 Fed. Reg.

---

[12] "[T]he ALJ may determine whether the claimant has the ability to adjust to other work in the national economy … by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

43,640, 2012 WL 3104869 (July 25, 2012).[13] No reversible error has been shown.

> [F]ibromyalgia[ is] a chronic disorder "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 77 Fed. Reg. 43,640, 43,641 (July 25, 2012). The symptoms of fibromyalgia "can wax and wane so that a person may have bad days and good days." Id. at 43,644 (quotation marks omitted). For this reason, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia]." Id. at 43,642. "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects" of the fibromyalgia symptoms, the ALJ will "consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." Id. at 43,643.

Bailey v. Soc. Sec. Admin., Comm'r, 791 F. App'x 136, 142–43 (11th Cir. 2019) (per curiam) (unpublished).

Even before the issuance of SSR 12-2p, the Eleventh Circuit Court of Appeals recognized that fibromyalgia's "hallmark is … a lack of objective evidence," as it "often lacks medical or laboratory signs, and is generally diagnosed mostly on a [sic]

---

[13] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Sullivan v. Zebley, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed. 2d 967 (1990). "Even though the rulings are not binding on [federal courts], [they are] nonetheless accord[ed] great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (unpublished) (citing B. ex rel. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981)). Additionally, courts "require the agency to follow its regulations "where failure to enforce such regulations would adversely affect substantive rights of individuals." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1361 (11th Cir. 2018) (quotations omitted).

individual's described symptoms." *Moore*, 405 F.3d at 1211 (citing *Stewart v. Apfel*, No. 99–6132, 245 F.3d 793 (11th Cir. Dec. 20, 2000) (unpublished)). *Accord Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) (per curiam) (unpublished) ("We, along with several other courts, have recognized that fibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms,' and that the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence.' " (citing *Moore*, 405 F.3d at 1211, and decisions of the Second, Sixth, and Seventh Circuits)). There is no tension between that prior case law and SSR 12-2p, however, as SSR 12-2p plainly does not require that a claimant's subjective statements regarding her fibromyalgia be supported by objective evidence. Rather, SSR 12-2p makes clear that a claimant's subjective statements about the effects of fibromyalgia are evaluated under the same standard as any other subjective complaints of disabling symptoms,[14] which is

---

[14] *See* SSR 12-2p, 2012 WL 3104869, at *5 & n.17 (in evaluating a person's statements about his or her symptoms and functional limitations from fibromyalgia, the Commissioner follows "the two-step process set forth" in 20 C.F.R §§ 404.1529(b)-(c), 416.929(b)-(c), and SSR 96-7p); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Social Security Ruling 12-2p provides guidance on how the SSA develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims. *See generally* SSR 12-2p, 2012 WL 3104869 (July 25, 2012). It sets out a two-step process for evaluating symptoms, which involves (1) determining whether medical signs and findings show that the person has a medically determinable impairment, and (2) once a medically determinable impairment is established, evaluating the 'intensity and persistence of the person's pain or any other symptoms' and determining 'the extent to which the symptoms limit the person's capacity for work.' *Id.* Then, in order to decide whether a person is disabled based on a medically determinable impairment of fibromyalgia, the SSA considers the regular five-step sequential evaluation process used for any adult claim for disability benefits. *Id.*").

as follows:

> If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. *Id.* § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding her symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

*Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831–32 (11th Cir. 2013) (per curiam) (unpublished).[15]

---

[15] Ward complains that "nowhere in the decision does the ALJ cite, reference or mention SSR 12-2p and its impact on the decision." (Doc. 16, PageID.1827). However, the ALJ expressly stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929[,]" and substantively described those requirements. (Doc. 12, PageID.139). Because SSR 12-2p adopts the requirements of §§ 404.1529 and 416.929 for evaluating complaints of fibromyalgia, any error by the ALJ in failing to expressly cite or reference SSR 12-2p is harmless. *See Sorter*, 773 F. App'x at 1073 ("On appeal, Sorter contends that the ALJ improperly evaluated her fibromyalgia under—and failed to explicitly cite—Social Security Ruling 12-2p. Although Sorter is correct that the ALJ did not specifically cite Ruling 12-2p, substantial evidence supports the conclusion that the ALJ properly evaluated her fibromyalgia under the two-step process set out in the Ruling because he considered the medical evidence, found that Sorter had a severe impairment, and evaluated that impairment using

While, as noted, objective evidence is not required to substantiate a claimant's subjective claims as to fibromyalgia, the lack of such evidence is still a valid consideration under both SSR 12-2p and the symptom-evaluation regulations, 20 C.F.R §§ 404.1529(b)-(c), 416.929(b)-(c). Thus, it is not reversible error for an ALJ to note such a dearth of objective evidence in his decision, so long as the decision does not indicate that the ALJ gave undue weight to this fact and that the ALJ considered both the medical and non-medical evidence in the record as a whole in evaluating the claimant's statements. *See Moore*, 405 F.3d at 1212 ("While in this case the ALJ did note that Moore's treating sources documented a 'lack of corroborative objective findings of impairment,' this absence of laboratory evidence was not the basis for the ALJ's own negative credibility determination. Unlike the situation in *Stewart*, where the lack of objective findings formed the basis for the adverse credibility determination, the ALJ here relied on the inconsistencies between Moore's descriptions of her diverse daily activities and her claims of infirmity. More specifically, the ALJ questioned Moore's contentions that she could not maintain consciousness or perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework … As the ALJ provided a detailed factual basis for his credibility determination, which did not turn on the lack of objective evidence documenting fibromyalgia, *Stewart* is unavailing to Moore." (footnote omitted)); *Lorenzi v. Comm'r, Soc. Sec. Admin.*, 550 F. App'x 855, 857 (11th Cir. 2013) (per curiam) (unpublished) ("Although we have

the five-step process.").

indicated that the 'hallmark' of fibromyalgia is a 'lack of objective evidence,' *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005), the ALJ did not rely on the absence of objective evidence of Lorenzi's hand pain. Rather, the ALJ relied on the inconsistencies between Lorenzi's descriptions of her daily activities, the objective medical evidence, and her claims of pain. The ALJ thus articulated explicit and adequate reasons for choosing to discredit Lorenzi's testimony.").

Ward argues that the ALJ's decision indicates he rejected her subjective complaints as to her fibromyalgia symptoms primarily, if not exclusively, due to a lack of supporting objective evidence, but the undersigned disagrees. While the ALJ did note a lack of objective support for Ward's complaints of disabling symptoms,[16] the ALJ also noted that other record evidence failed to support those complaints. For instance, in finding that the evidence was "only partially supportive of [Ward]'s allegations[,]" the ALJ noted that Ward was "still able to perform basic personal care, perform some light household chores, shop, and handle finances despite the impairments and associated symptoms." (Doc. 12, PageID.139-140). *See* SSR 12-2p, 2012 WL 3104869, at *5 ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities…"). The ALJ also noted that, while Ward had "a substantial history of medical treatment for her conditions, … this treatment was generally

---

[16] Ward appears to argue that objective evidence did in fact support her complaints, but the evidence she cites largely consist of her own reports of symptoms in the medical record.

conservative in nature[,]" "effectively treated" Ward's impairments, and did "not fully support [Ward]'s allegations of disability." (Doc. 12, PageID.140-141, 145). *See* SSR 12-2p, 2012 WL 3104869, at *5 ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including … medications or other treatments the person uses, or has used, to alleviate symptoms…"). Furthermore, the ALJ also considered the various medical opinions of record in determining that Ward's symptoms were not disabling as she claimed. *See* (Doc. 12, PageID.145-147); SSR 12-2p, 2012 WL 3104869, at *5 ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including … statements by other people about the person's symptoms."). Ward does not address these other considerations, let alone claim they do not constitute substantial evidence. Accordingly, contrary to Ward's first claim of error, the ALJ's decision adequately indicates that he evaluated Ward's fibromyalgia under the proper standards.

### b.    Medical Opinion

Ward next claims that the ALJ reversibly erred in rejecting the medical opinion of one of her treating physicians, Dr. Glenton Davis, without providing sufficient cause, and in giving greater weight to the medical opinion of Dr. William Whatley, a medical expert who did not examine Ward but reviewed the record evidence and testified at Ward's hearing. The undersigned disagrees.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished); *accord Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 751 (11th Cir. 2018) (per

curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

The opinions of non-treating physicians "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord, e.g.*, *Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight."). On the other hand, "[t]he opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

Failure to clearly articulate the reasons for giving less than substantial or considerable weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. Moreover, an ALJ "may not arbitrarily reject uncontroverted medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), or "substitute[] his judgment of the claimant's condition for that of the medical and vocational experts." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam). "But ALJs are permitted, and in fact required, to use judgment in weighing competing evidence and reaching a final determination as to whether an applicant is disabled[,]" *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 n.1 (11th Cir. 2020) (per curiam) (unpublished), and "if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished). A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).[17]

---

[17] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to the subject applications. *Compare* 20 C.F.R. §§ 404.1520c,

Dr. Davis provided two medical opinions in Ward's case, one in January 2015 (Doc. 12, PageID.1543-1546), the other in April 2018 (*id.*, PageId.1788-1790). Noting that the 2018 opinion was "virtually identical" to the 2015 one, the ALJ summarized the 2015 opinion as finding Ward "could only sit/stand/walk for one hour during an 8-hour workday[, and] could only lift and carry up to 5 pounds occasionally and 1 pound frequently," among other limitations. (*Id.*, PageID.145-146). Both opinions noted that they were based on Ward's fibromyalgia, among other diagnoses. While "acknowledg[ing] the long-term treatment relationship between Dr. Davis and" Ward, the ALJ nevertheless stated several reasons for rejecting Dr. Davis's opinions: (1) they were completed on "check box, circle answer forms" that were conclusory and "fail[ed] to reference any objective clinical and laboratory or objective testing[;]" (2) they were "not fully consistent with the objective findings in the record and [Ward]'s medical history[,] which "revealed generally normal findings with regular treatment[;]" [18] (3) they were "based more on [Ward's] subjective complaints … rather than on the objective record[;]" and (4) they were contradicted by the medical opinion of Ward's treating cardiologist Dr. Steven Allyn, which the ALJ afforded great weight. Taken together, these statements articulate ample "good cause" to reject Dr. Davis's opinions.

Similar to her first claim of error, Ward argues that the ALJ inappropriately

---

416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017).

[18] The ALJ cited specific examples of these normal findings in notes from a January 3, 2018 examination, and in notes from the April 2018 examination at which Dr. Davis rendered his second medical opinion.

rejected Dr. Davis's opinions primarily due to a lack of objective supporting evidence, despite the ALJ's acknowledgement that Dr. Davis's opinions were based on Ward's fibromyalgia, which is usually characterized by a lack of objective support, as noted previously. For this claim, Ward relies significantly on the Eleventh Circuit's unpublished decision in *Somogy*, in which the claimant Somogy also suffered from fibromyalgia. There, the ALJ rejected the medical opinion of Somogy's treating rheumatologist on two stated grounds: (1) it was based on Somogy's subjective complaints rather than objective medical evidence, and (2) Somogy "may not have seen" the treating physician for several years before the opinion questionnaire was completed. *Somogy*, 366 F. App'x at 63. After rejecting the latter ground as "flatly contradicted by the record," the panel found "unpersuasive the ALJ's only other stated reason for discounting" the opinion, "namely, that the limitations imposed therein 'are based primarily upon [Somogy's] subjective complaints.' " *Id.* Discussing Eleventh Circuit precedent and decisions from other circuit courts discussing fibromyalgia, the panel held that "[t]he lack of objective clinical findings is, at least in the case of fibromyalgia, … insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations." *Id.*

However, the *Somogy* panel also noted that Somogy's subjective complaints, "which the ALJ discredited *without adequate reason*," were generally bolstered by the record; thus, "[t]he fact that [the treating rheumatologist] relied on Somogy's complaints … in no way render[ed] her opinion unreliable and thus c[ould ]not

constitute substantial evidence to support the ALJ's decision." *Id.* at 64-65 (emphasis added). On the other hand, as the Commissioner's brief notes, four and a half years after *Somogy* another panel of three Eleventh Circuit judges—two of whom were also on the *Somogy* panel—issued an unpublished decision upholding an ALJ's rejection a treating physician's opinion where "the ALJ did not rely on the absence of objective evidence of fibromyalgia in discounting [the] opinion," but "[r]ather, … relied on the fact that [the treating physician] admitted that his opinion was based on Claimant's subjective reports of her symptoms, which … were not entirely credible in light of the inconsistencies in her testimony and between her testimony and the record evidence." *De Olazabal v. Soc. Sec. Admin., Com'r*, 579 F. App'x 827, 830 (11th Cir. 2014) (per curiam) (unpublished).

As was found earlier, Ward has not shown that the ALJ erred in finding that her subjective complaints were not fully credible. Thus, as in *De Olazabal*, the ALJ was entitled to discounted Dr. Davis's opinions after finding they were largely based on those same unreliable subjective complaints and were not otherwise supported by objective evidence. Moreover, unlike in *Somogy*, the ALJ gave other good grounds besides a lack of objective evidence to reject Dr. Davis's opinions. The ALJ found Dr. Davis's opinion to be inconsistent with that of treating physician Dr. Allyne, to which the ALJ gave greater weight. *Cf. Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam) (The Commissioner "is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly."); *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691

n.1 (11th Cir. 2020) (per curiam) (unpublished) ("ALJs are permitted, and in fact required, to use judgment in weighing competing evidence and reaching a final determination as to whether an applicant is disabled.").[19] The ALJ further rejected Dr. Davis's opinions as "conclusory," a finding which Ward does not address, and which itself is good cause to reject a treating physician's opinion. *See Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight…").[20]

Ward also claims that the ALJ should not have assigned great weight to Dr. Whatley's opinion because his testimony demonstrated he was biased against the diagnosis of fibromyalgia, "and his lack of understanding of the condition was fully displayed in the hearing as he himself emphasized the lack of objective criteria in

---

[19] Ward argues that Dr. Allyn's opinion should not have been used to discount Dr. Davis's opinions because Dr. Allyn, a cardiologist, "only treated Ms. Ward for her cardiac conditions, not her fibromyalgia." (Doc. 16, PageID.1836). However, the ALJ's decision demonstrates awareness of the fact that Dr. Allyn limited his opinion to a determination that Ward "is not disabled due to heart issues." (Doc. 12, PageID.147). Moreover, the opinion was from a treating source, Ward does not otherwise argue why Dr. Allyn's opinion was not entitled to great weight on its own, and the ALJ's decision adequately indicates Dr. Allyn's opinion was only one of several grounds for rejecting Dr. Davis's opinions.

[20] The ALJ also noted that Dr. Davis's opinions were inconsistent with "the established residual functional capacity" and "the opinion of Dr. Whatley." (Doc. 12, PageID.146). However, the opinion of a non-examining physician cannot provide "good cause" to reject a treating physician's opinion, *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam), and as the undersigned has previously noted, "medical opinions … are to be examined and weighed as part of the RFC assessment, rather than as *post hoc* justification for an RFC predetermined without consideration of 'all the relevant evidence.' In other words, at Step Four the evidence is supposed to justify the RFC, not *vice versa*." *Caffey v. Colvin*, No. CV 15-00490-N, 2016 WL 6436564, at *10 (S.D. Ala. Oct. 28, 2016). Nevertheless, these errors are harmless, as the ALJ articulated sufficient other "good cause" to reject Dr. Davis's opinions.

the diagnosis." (Doc. 16, PageID.1835).[21] According to Ward, "Dr. Whatley did not even address or include fibromyalgia as an impairment[,]" "[i]t is clear from the record that Dr. Whatley does not believe fibromyalgia is a medically determinable impairment, hence his failure to list it as one in his testimony[,]" and "[i]t is also clear he completely discounted fibromyalgia because in his opinion there are no objective criteria and the diagnosis is based purely on subjective complaints." (Doc. 16, PageID.1828-1829).

However, as the ALJ noted, when specifically questioned about the fibromyalgia diagnosis by Ward's representative, Dr. Whatley stated that "he considered th[e] condition under the osteoarthritis condition." (Doc. 12, PageID.140. *See also id.*, PageID.170-171). The ALJ also noted that, while he "testified there was no objective criteria in this case for fibromyalgia[,]" Dr. Whatley correctly recognized that "it was a diagnosis generally related to subjective complaints." (*Id.*, PageID.140. *See also id.*, PageID.171). As "credibility determinations are the province of the ALJ[,]" *Moore*, 405 F.3d at 1212, it was not error for Dr. Whatley to limit his testimony to whether objective evidence supported Ward's fibromyalgia symptoms, and, as explained above, the ALJ's decision adequately indicates he considered other relevant factors in rejecting Ward's subjective complaints. (*See also*

---

[21] Though Ward does not expressly raise this issue, the undersigned notes that the ALJ was entitled to give more weight to the opinion of a non-examining physician such as Dr. Whatley once he determined that "good cause" existed to reject the treating physician's opinion. *See Steele v. Saul*, No. CV 1:19-00728-N, 2020 WL 7647483, at *11 (S.D. Ala. Dec. 23, 2020) (when there is "adequate 'good cause' to assign less than significant weight to [the treating physician]'s opinions…, an ALJ may then properly give more credit to the opinions of non-examining physicians" (citing cases)).

Doc. 12, PageID.145 ("The undersigned has considered the entirety of the evidence in conjunction with the opinion of Dr. Whatley and … finds the claimant has some additional limitations than those noted by Dr. Whatley due to a combination of the claimant's impairments.")).[22]

In sum, Ward has not shown the ALJ erred in his consideration of the medical opinions of record.

### c.    RFC

Finally, Ward argues that the Commissioner's RFC is not supported by substantial evidence because "there is an insufficient nexus between the ALJ's residual functional capacity and the entirety of medical records in the file." (Doc. 16, PageID.1837). The undersigned is not persuaded.

"In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester*, 792 F.2d at 131. If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the

---

[22] *Jacobsen v. Berryhill*, No. 2:16-CV-1608-KOB, 2018 WL 1399292 (N.D. Ala. Mar. 20, 2018) (Bowdre, C.J.), cited by Ward as being "very similar" on this issue, is distinguishable. There, the district court found reversible error because the ALJ found the claimant's fibromyalgia was not even a medically determinable impairment based primarily on the testimony of a non-examining medical expert who admitted he was "skeptical" of fibromyalgia as being "a medically determinable condition" at all. Here, Dr. Whatley, at most, expressed a belief that fibromyalgia is primarily shown through subjective complaints rather than objective testimony, which is consistent with SSA guidance and Eleventh Circuit case law. He expressed nothing close to the skepticism of the disease the medical expert in *Jacobsen* did. Moreover, unlike in *Jacobsen*, the ALJ here found that fibromyalgia was a medically determinable, and even a severe, impairment for Ward.

administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter*, 791 F.2d at 1548. The Commissioner must not only apply the correct law[,]" but also "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted…" *Keeton*, 21 F.3d at 1066.

Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)). Eleventh Circuit precedent does not require exacting detail or precision in an ALJ's decision, only that the ALJ "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. *See also Garcia v. Comm'r of Soc. Sec.*, 833 F. App'x 303, 305-06 (11th Cir. 2020) (per curiam) (unpublished) ("We will reverse only if the ALJ 'fails to state with at least some measure of clarity the grounds for his decision.' *Winschel*, 631 F.3d at 1179 (internal quotation mark omitted). []Here, the ALJ did not commit reversible error in his articulation of the weight accorded to Dr. Tauler's treatment notes. Although the ALJ did not refer to each of Dr. Tauler's treatment notes, his decision illustrates that he considered the content of the notes and explained 'with

at least some measure of clarity' the grounds for discounting Dr. Tauler's medical opinions. *Id.* Thus, we find no reversible error in this regard."); *Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 804 (11th Cir. 2017) (per curiam) (unpublished) ("Here, substantial evidence supported the ALJ's finding that Brito's testimony regarding her symptoms was not entirely credible. Although Brito points to other evidence in the record that was consistent with her hearing testimony and to which the ALJ did not specifically refer in making her credibility determination, the ALJ was not required to examine or reference every piece of evidence, so long as it is evident, as it is here, that the ALJ considered Brito's medical condition as a whole." (citing *Mitchell*, 771 F.3d at 782)).[23]

Here, the ALJ's decision adequately indicates that he considered the record as a whole in formulating the RFC. While Ward cites numerous instances of "chronic pain, chronic chest pain, chronic shortness of breath, fatigue, and headaches/migraines throughout the course of her treatment records" that the ALJ purportedly ignored (Doc. 16, PageID.1839), the ALJ did not find that Ward was not experiencing such symptoms at all, only that they did not rise to a disabling

---

[23] In arguing this claim of error, Ward's brief relies on decisions from both this Court and other district courts in this circuit, suggesting that ALJs must "show their work" in formulating RFCs by providing "a sufficient rational link" to specific substantial evidence in the record. (Doc. 16, PageID.1837-1838). "[D]istrict court opinions are not binding precedent[,]" *Washington v. Rivera*, 939 F.3d 1239, 1244 n.8 (11th Cir. 2019); *see also, e.g.*, *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."), and the undersigned does not find those opinions to be persuasive to the extent Ward suggests they require a level of detail in an ALJ's decision beyond that required by the Eleventh Circuit authorities cited prior to this footnote.

severity. At most, Ward is asking the Court to impermissibly reweigh the evidence in her favor.

Ward also complaints that "the ALJ stated [she] 'receives only medication treatment, therapy, and pain management with injections as her primary treatment(s) in her history of treatment' as if there were an indication in the record that she should or could be doing something more in the way of treatment." (*Id.*). Ward appears to suggests that the mere fact she is receiving treatment for her pain should suggest disability. However, the ALJ was noting that her pain and other symptoms appeared to be largely "treated effectively with medication, therapy, and routine medical care" (Doc. 12, PageID.145), and it is axiomatic that a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quotation omitted).

Finally, Ward claims the ALJ erroneously found she had no side effects from her medications. However, in support of his statement that Ward "has reported no medication side effects" (Doc. 12, PageID.146), the ALJ specifically cited to a physician's progress note from April 12, 2017, stating that Ward reported "[n]o Rx side effects." (*Id.*, PageID.1756). Ward claims that "the records contain numerous complaints of side effects from medication" (Doc. 16, PageID.1839-1840), but cites only three instances in support, which indicated that some of Ward's medications made her drowsy and groggy. (Doc. 12, PageID.1119, 1459, 1696). However, the notes that Ward cites predate the note cited by the ALJ, allowing a reasonable

inference that medication side-effects were no longer a significant issue by the April 12, 2017 examination. Regardless, he fact that Ward can cite some evidence that cuts against the ALJ's decision does not warrant reversal.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Ward's applications for benefits is therefore due to be **AFFIRMED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Ward's November 4, 2016 applications for DIB and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of March 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**